## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **A.S.-1 and A.S.-2**

**No. 19-1099** (Wood County 18-JA-173 and 18-JA-174)

**FILED**

**July 20, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother R.H., by counsel Eric K. Powell, appeals the Circuit Court of Wood County's November 20, 2019, order terminating her parental rights to A.S.-1 and A.S.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Branden D. Ledford, filed a response on behalf of the children in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in denying her motion to extend her post-adjudicatory improvement period and terminating her parental rights upon allegations not raised in the petition.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2018, the DHHR filed a child abuse and neglect petition following the death of petitioner's infant son. The child suffocated after petitioner fell asleep while breastfeeding him in bed. The DHHR alleged that petitioner neglected her two other children by abusing controlled substances and not providing suitable housing. Additionally, the DHHR alleged that petitioner was a respondent in a prior abuse and neglect petition in 2013 related to issues of substance abuse, domestic violence, and dishonesty with law enforcement. The DHHR alleged that petitioner participated in services in the 2013 proceedings, but she failed to remedy the conditions of abuse

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because the children share the same initials, we refer to the older child as A.S.-1 and the younger child as A.S.-2 throughout this memorandum decision.

and neglect and her parental rights to her two oldest children were terminated. Petitioner waived her right to a preliminary hearing.

In November of 2018, petitioner stipulated to allegations that she did not provide the children with safe and appropriate housing and that her substance abuse negatively affected her ability to parent the children. Petitioner also stipulated to the circumstances surrounding the prior termination of her parental rights in 2013. The circuit court accepted petitioner's stipulations and adjudicated her as an abusing parent. Thereafter, petitioner moved for a post-adjudicatory improvement period.

The circuit court held a hearing on petitioner's motion in February of 2019, and found that petitioner's abstinence from cocaine and her ability to successfully parent A.S.-1 and A.S.-2 for four years constituted a substantial change in circumstances from the prior termination of her parental rights in 2013. Additionally, the circuit court found that the death of petitioner's infant son was accidental. Accordingly, the circuit court granted petitioner's motion for a post-adjudicatory improvement period.

In July of 2019, the circuit court held a review hearing and continued petitioner's improvement period. Also, the circuit court heard evidence regarding the father's unwillingness to participate in an improvement period and, ultimately, terminated his parental rights to the children. In August of 2019, the circuit court held a review hearing and, upon learning that A.S.-2 had been diagnosed with autism, ordered the DHHR to provide petitioner with appropriate parenting training. According to the DHHR's report, petitioner did not believe the autism diagnosis. Additionally, the DHHR noted multiple safety concerns during visitations, including petitioner yelling and screaming at the children, refusing to accept recommendations from the providers, and ignoring A.S.-2's self-harming behaviors. Due to these concerns, and to lessen the stress on the children, the circuit court reduced the frequency of petitioner's supervised visitations.

The circuit court held dispositional hearings in October and November of 2019. Petitioner moved to extend her post-adjudicatory improvement period, and the DHHR moved to terminate petitioner's parental rights. The DHHR presented evidence that petitioner failed to comply with the terms of her post-adjudicatory improvement period and failed to demonstrate an ability to safely parent the children. In September of 2019, the DHHR learned that petitioner was having contact with the father in violation of the terms of her improvement period. Further, petitioner was confronted regarding this contact during a multidisciplinary team ("MDT") meeting and denied that the contact occurred. Petitioner's visitations were suspended as a result. Petitioner later admitted that she had contact with the father despite being ordered not to see him. This contact included being present for an incident where the father and another individual had an altercation that involved a knife, bonding the father out of jail after he was arrested and criminally charged, and providing a statement to police to support his innocence of the crimes. The circuit court heard evidence that, during the course of the proceedings, the father issued violent threats against petitioner, chased her in a vehicle, and broke into her home. Although the father was charged with multiple violations of a domestic violence protective order as a result of his actions, petitioner requested the prosecuting attorney dismiss the charges and then failed to appear for related hearings. When asked how petitioner could ensure the safety of the children from the father, she stated that she would follow through with criminally prosecuting him in the future.

Regarding petitioner's supervised visitations, the evidence showed that petitioner failed to improve her parenting skills throughout the proceedings. The service provider described the visitations as "stressful" and "hectic" for the children. Petitioner argued with A.S.-1, and A.S.-1 distressed A.S.-2 by taking things from her, which petitioner could not control. Also, A.S.-2 would "demonstrate self-injurious behavior, such as banging her head on the wall, throwing herself on the floor, upsetting chairs . . . [and] screaming." Additionally, petitioner was argumentative with providers and failed to consistently implement their recommendations. The providers opined that petitioner showed "no empathy whatsoever" for her children and that she did not try to comfort A.S.-2 when she initiated self-injurious behavior. The DHHR provided petitioner with specific training to parent an autistic child and recommended additional resources on the subject, but petitioner did not utilize those recommendations and remained in denial that her child needed specialized care. Finally, the circuit court heard evidence that petitioner consistently submitted negative drug screen results throughout the proceedings and had a safe and suitable home environment for the children.

Ultimately, the circuit court denied petitioner's motion for an extension to her post-adjudicatory improvement period and terminated her parental rights. In doing so, the circuit court found that petitioner had "refrained from using drugs" and had a "suitable space for the children," but also noted that after nine months of services there were still issues of "great concern" regarding petitioner's parenting. Based on the reports of the visitation supervisor, the circuit court found that petitioner could not properly parent the children if returned to her custody. Further, the court found that petitioner was untruthful with the MDT regarding her contact with the father, which "negate[d] her ability to have a successful improvement period." The circuit court considered that contact with the father was a safety issue for the children and that petitioner put herself in danger by bonding the father out of jail, providing statements on his behalf, and failing to prosecute his violations of a protective order. The circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of petitioner's parental rights was necessary for the children's welfare. The circuit court also denied post-termination visitation upon finding that it was not in the children's best interests. The circuit court memorialized its decision in its November 20, 2019, order. Petitioner now appeals that order.[2]

The Court has previously held as follows:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left

---

[2]As mentioned above, the father's parental rights were terminated in July of 2019. According to the parties, the children were separated during the proceedings, and the permanency plan for the children is adoption in their respective foster placements.

with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in terminating her parental rights after finding that she substantially corrected conditions of her substance abuse and inappropriate housing. She asserts that the issues upon which the circuit court terminated her parental rights, which she describes as her "mental inability to parent the children" and her "failure to protect the children" from the father, were not alleged in the initial petition.[3] Petitioner argues that because she was not provided notice of these allegations, she was denied due process and a meaningful opportunity to be heard on these issues, and in support cites *In re Samantha M.*, 205 W. Va. 383, 518 S.E.2d 387 (1999). We find petitioner's argument to be without merit.

To begin, we note that the circumstances of *Samantha M.* are distinguishable from this case. In *Samantha M.*, this Court reversed a circuit court's termination of a parent's custodial rights when the initial petition contained no allegations against that parent. *Id.* at 385, 518 S.E.2d at 389. In that case, we noted the statutory requirement in West Virginia Code § 49-4-601 that a child abuse and neglect petition must allege "specific conduct" as to how a parent's actions constitute child abuse or neglect. *Id.* at 388, 518 S.E.2d at 392. "The purpose of requiring specific allegations is to afford the charged parent with notice of why the termination proceeding is being conducted and to afford [her] an opportunity to address the charge. " *Id.* Here, however, the petition alleged that petitioner failed to provide the children with adequate housing, that her substance abuse negatively affected her ability to parent, and that her parental rights to two older children were terminated due to her failure to correct circumstances of substance abuse and domestic violence. These allegations were sufficiently specific to provide petitioner notice as to why the termination proceedings were being conducted. Petitioner stipulated to these allegations, was adjudicated as an abusing parent, and was granted an improvement period. Therefore, we find petitioner was not denied due process and is entitled to no relief on this ground.

Also, the circuit court did not err in considering petitioner's inability to parent the children during supervised visitations and her failure to protect the children from the father, because petitioner agreed to participate in those terms as part of her improvement period. Further, the

---

[3]Although petitioner argues that the circuit court erred in considering her "mental inability to parent the children," there is no indication in the record that petitioner's mental faculties limited her ability to parent the children. Indeed, petitioner's parental fitness evaluation indicated that she was of average intelligence, and none of her providers testified that she had trouble understanding the content of classes. Further, the circuit court did not mention that petitioner experienced any mental deficiencies in its dispositional findings. Rather, the circuit court considered petitioner's inability to safely parent her children despite numerous services and instruction.

circuit court has discretion in determining whether petitioner's improvement period was successful.

> At the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

Syl. Pt. 6, *In Interest of Carlita B.,* 185 W. Va. 613, 408 S.E.2d 365 (1991). More recently, this Court held that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014).

Here, the evidence of which petitioner complains was directly related to her participation in and completion of the terms of her improvement period and whether the children's reunification with her was in their best interests. Petitioner's improvement period required that she participate in parenting classes, participate in supervised visitations, and end her relationship with the children's father if he failed to comply with the terms of his case plan. As the circuit court found, petitioner could not demonstrate an ability to safely parent the children during relatively short periods of time as evidenced during her supervised visitations, which is especially concerning considering A.S.-2's self-injurious behaviors. The visitations were described as "hectic" and "stressful" for the children, and petitioner's inability to parent the children would have affected their health and welfare if they were returned to petitioner's custody. Additionally, petitioner's continued willful contact with the father raised significant safety concerns, and she consistently failed to follow through with measures that would limit those concerns, such as prosecuting him for violating protective orders entered for her benefit. The DHHR also reported that petitioner was not receptive to the recommendations of her parenting instructor or the visitation supervisor. Critically, petitioner had a meaningful opportunity to contest the DHHR's evidence that she failed to complete these terms of her improvement period. She participated in multiple review and dispositional hearings where the DHHR presented evidence of these concerns, and petitioner challenged that evidence. Because the evidence presented was directly related to petitioner's participation and completion of the terms of her improvement period, it did not constitute new allegations of abuse and neglect, as petitioner argues on appeal. Accordingly, petitioner was not denied due process, and the circuit court did not err in considering this evidence for the purpose of disposition.

Petitioner also argues on appeal that the circuit court erred in denying her motion to extend her post-adjudicatory improvement period. She asserts that she substantially complied with the terms of the improvement period, that continuation of the improvement period would not substantially impair the DHHR's ability to permanently place the children, and that the extension

was otherwise in the best interests of the children. *See* W. Va. Code § 49-4-610(6).[4] Petitioner further asserts that A.S.-2's autism diagnosis was not disclosed to the circuit court until August of 2019 and, thus, the circuit court did not order that petitioner's services be tailored to address that diagnosis until that time. Petitioner notes that the foster parents were aware of the child's diagnosis in April of 2019 and were provided specific services to help parent the child. Petitioner argues that it was fundamentally unfair to terminate her parental rights without providing her similar services to help parent A.S.-2. However, we find petitioner is entitled to no relief.

The circuit court properly denied petitioner's motion to extend her improvement period because she had not improved her parenting after nine months of services and refused to follow the recommendations of her treatment providers. Despite instruction, petitioner continued to yell and scream at the children and ignore safety issues during visitations. Similarly, the record indicates that petitioner did not accept A.S.-2's autism diagnosis, did not follow through with additional recommend resources to assist in parenting in light of the diagnosis, and expressed plans to have the child retested at an out-of-state facility. There is no indication in the record that an extension would have changed petitioner's attitude, which appeared to limit her ability for parental improvement. Accordingly, we find no error in the circuit court's finding that an extension to her improvement period would "not change anything" and no error in its denial of her motion to extend the improvement period.

The evidence regarding petitioner's failure to respond to a reasonable family case plan supports the circuit court's finding that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future and that termination of petitioner's parental rights was necessary for the children's welfare. West Virginia Code § 49-4-604(b)(6) (2019)[5] provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of the parent's parental rights is necessary for the welfare of the children. Further, West Virginia Code § 49-4-604(c)(3) (2019) states that circumstances in which there is "[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected" includes a situation where

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

---

[4]West Virginia Code § 49-4-610(b) provides that a circuit court may extend a post-adjudicatory improvement period for three months "when the court finds that the respondent has substantially complied with the terms of the improvement period; that the continuation of the improvement period will not substantially impair the ability of the department to permanently place the child; and that the extension is otherwise consistent with the best interest of the child."

[5]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

Although it was commendable that petitioner refrained from substance abuse and obtained suitable housing for the children, petitioner failed to respond to the family case plan in addressing her parenting deficiencies. As provided above, petitioner failed to safely parent the children during supervised visitations and failed to address the safety concerns raised by the father's persistent threatening behavior. The circuit court properly found that these deficiencies would threaten the children's health and welfare if they were returned to petitioner's care. Further, petitioner was resistant to recommendations from her parenting class provider and her visitation supervisor, which indicates that further improvement in these areas would be unlikely. Accordingly, we find no error in the circuit court's finding that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future and that termination was necessary for the welfare of the children.

Finally, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As the circuit court's findings that there was no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and that termination was necessary for the children's welfare were proper, we find no error in the circuit court's order terminating petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 20, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: July 20, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

7